**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOE BALTAS,<br>　　　Plaintiff, | : <br> : <br> : | CASE NO. 3:19-cv-1043 (MPS) |
| v. | : <br> : | |
| HECTOR RIVERA, et al.,<br>　　　Defendants. | : <br> : <br> : <br> : | AUGUST 21, 2019 |

_____

**INITIAL REVIEW ORDER**

Plaintiff Joe Baltas, currently incarcerated at the Souza-Baranowski Correctional Center in Shirley, Massachusetts, filed this case under 42 U.S.C. § 1983. The plaintiff sues five employees of the Connecticut Department of Correction: Lieutenant Hector Rivera, Lieutenant Harris, Counselor Scheaffer, Captain Ernesteine Green, and Warden Allison Black. He contends that the defendants violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments. The plaintiff seeks a prejudgment remedy, compensatory damages, "spoliation sanctions," punitive damages, costs, attorney's fees, and an order that the Officer of the U.S. Attorney investigate his allegations for any criminal wrongdoing.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. _Nicholson v. Lenczewski_, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing

*Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)).  Here, the plaintiff is proceeding *in forma pauperis.*

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

"Although courts must interpret a pro se complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility."  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

I.    <u>Allegations</u>

On April 20, 2018, the plaintiff was placed on Chronic Discipline status.  Prison directives provide that an inmate may be removed from Chronic Discipline status if he remains disciplinary report free for 90 days.  The plaintiff's last disciplinary report was issued on July 19, 2018, and he was released from Chronic Discipline status in October 2018.  ECF No. 1. ¶ 20.

On November 8, 2018, the plaintiff was transferred to Massachusetts under an interstate compact agreement.  *Id.*  On November 30, 2018, the plaintiff was returned to Connecticut to attend court.  He was admitted to Hartford Correctional Center ("HCC").  *Id.*, ¶ 21.

Defendant Rivera is the unit manager of the restrictive housing units ("RHU") at HCC.

*Id.*, ¶ 22.  After the plaintiff was processed, defendant Rivera told him that he would be placed in a restrictive housing unit because of his Chronic Discipline status.   In restrictive housing, the plaintiff would be unable to receive visits or social mail, would receive only one hour of recreation five days per week, would be permitted only three showers per week, and would be denied telephone access because of an outstanding disciplinary sanction.  *Id.*, ¶ 23.  The plaintiff told defendant Rivera that he had been taken off Chronic Discipline status before he left Connecticut.  The plaintiff also stated that, even if he had been on Chronic Discipline status, a new hearing would be required before he could be returned to Chronic Discipline status.  *Id.*, ¶ 24.

Defendant Rivera stated that he, not the plaintiff, dictates treatment.  *Id.*, ¶ 25.  The plaintiff was placed in RHU South Block, which housed inmates classified as Security Risk Group members, Special Needs, and Protective Custody.  The plaintiff was denied rights and privileges he would have had in general population, such as social activities, exercise, visits, and communication.  *Id.*, ¶ 26.

On December 3, 2018, a protective custody/security risk group inmate falsely accused the plaintiff of throwing urine on him through a secure and sealed door.  The plaintiff and other inmates submitted written statements that the accusation was false.  *Id.*, ¶ 27.  A lieutenant responded to the unit and stated that defendant Rivera had been contacted and ordered that the plaintiff be placed in segregation.  After "some verbal controversy," the plaintiff was moved to the segregation unit.  *Id.*, ¶ 28.

On December 5, 2018, defendant Rivera threatened the plaintiff with physical harm and reiterated his position that he dictated the plaintiff's life at HCC.  *Id.*, ¶ 29.  The plaintiff

submitted request forms to various administrators at HCC and requested preservation of video surveillance footage. *Id.*, ¶ 30. Defendant Green came to the housing unit and told the plaintiff that he would receive no responses to his requests and that video surveillance footage would not be preserved. *Id.*, ¶ 31.

On December 7, 2018, defendant Rivera ordered the plaintiff to move to another cell in the segregation unit. The new cell had a crack in the exterior wall, exposing the interior of the cell to the elements. As it was winter, the new cell was very cold. The move was intended to harass the plaintiff. *Id.*, ¶ 32. The plaintiff refused to move and asked to speak with a supervisor. *Id.*, ¶ 33.

Defendant Rivera threatened to deploy a chemical agent and beat the plaintiff over the head stating "you['re] going to learn you're my bitch today." *Id.*, ¶ 34. The plaintiff felt fearful and anxious. He decided to do what he could to prevent the defendant Rivera from using force against him. *Id.*, ¶ 35. The plaintiff then stated that he agreed to be moved, but when defendant Rivera opened the trap in the cell door, the plaintiff threw a cup of cold water at defendant Rivera. The plaintiff assumed that defendant Rivera would then remove himself from the situation and have a different supervisor respond to the incident. *Id.*, ¶ 36. But defendant Rivera did not remove himself and remained in command of the situation. *Id.*, ¶ 37.

The plaintiff then covered his window, believing this would cause other staff to respond and record the incident. *Id.*, ¶ 38. Several officers responded and defendant Harris began to record the incident on a hand-held video-camera. *Id.*, ¶ 39. Under defendant Rivera's supervision, the officers began planned use of force procedures. The plaintiff repeatedly stated that defendant Rivera had threatened him and that he only wanted a captain or administrator to

come to the unit.  None of the officers, including specifically defendant Harris, interceded to stop the procedures or called a supervisor.  *Id.*, ¶¶ 40-41.

Defendant Rivera ordered the use force against the plaintiff.  *Id.*, ¶ 42.  The plaintiff held his mattress against the trap and continued to request a supervisor.  *Id.*, ¶ 43.  Defendant Rivera began to personally use force against the plaintiff in violation of prison directives.  *Id.*, ¶ 44.  Defendant Rivera used the Barricade Obstruction Tool ("BOT"), a long metal cylindrical object designed to push aside obstructions and deploy a chemical agent.  He deliberately and forcefully struck the plaintiff several times with the BOT.  *Id.*, ¶ 45.

When a chemical agent was disbursed, the plaintiff stated that he was asthmatic and had a history of negative reactions to the chemical agent.  Defendant Rivera denied this and deployed more of the chemical agent into the cell.  *Id.*, ¶ 46.  He ignored the plaintiff's documented medical condition.  *Id.*, ¶ 47.

Throughout the incident, the plaintiff stated that he feared defendant Rivera and would comply if a supervisor were present.  Rather than intervening, defendant Harris encouraged defendant Rivera in the use of force.  *Id.*, ¶ 48.  After being struck several times with the BOT, the plaintiff again requested a supervisor.  Defendant Rivera denied the request saying, "You don't dictate here" and "You're gonna learn today."  He then continued to strike the plaintiff and deploy the chemical agent.  *Id.*, ¶ 49.

The chemical agent finally overwhelmed the plaintiff causing him to leave the cell.  *Id.*, ¶ 51.  The plaintiff submitted to restraints.  *Id.*, ¶ 52.  Defendant Rivera ordered use of a safety veil which should only be utilized when there is an immediate threat of the inmate spitting at staff.  *Id.*, ¶ 53.  The plaintiff alleges there was no such threat.  *Id.*  Because of the veil, the plaintiff

could not be properly decontaminated. *Id.*, ¶¶ 54-55. Defendant Rivera then ordered the plaintiff's placement in in-cell restraints consisting of handcuffs and shackles connected by a tether chain. The restraints were not necessary as the plaintiff remained calm and compliant. *Id.*, ¶ 56. Defendant Rivera shortened the tether chain to cause the plaintiff discomfort and pain, an action expressly prohibited by correctional policy and procedures. He instructed the camera operator to hold the camera high so this action would not be recorded. *Id.*, ¶ 57.

The plaintiff remained in in-cell restraints for 24 hours. The cell did not have an operable toilet and the light remained on all day and night. The plaintiff experienced pain from the restraints and chemical agent. *Id.*, ¶ 58. Defendant Harris conducted the required restraint checks. She refused to remove the restraints or permit medical staff to enter the cell to check the restraints. *Id.*, ¶ 59. She also ordered the unit officers to falsify documents to indicate that the plaintiff was non-compliant. *Id.*, ¶ 60.

The plaintiff was removed from the restraints on December 8, 2018 and placed in the cell that was exposed to the elements. In addition to cold temperatures, the toilet did not flush, there was no running hot water in the sink, and the light remained on all day and night. The constant light was at defendant Rivera's order. *Id.*, ¶ 61. The plaintiff submitted requests to the warden and administrative captain about the incidents and requested preservation of video surveillance recordings. *Id.*, ¶ 62.

On December 11, 2018, the plaintiff spoke with Warden Black when she toured the unit. He described the incidents and the refusal to process prior requests. Defendant Black stated that defendant Rivera and the other officers had her full support. *Id.*, ¶ 63.

On December 12, 2018, the plaintiff observed defendant Rivera use a chemical agent on

inmate Jumpp.  After removing inmate Jumpp from the cell, defendant Rivera had inmate Jumpp's cellmate moved to a different cell because the cell was contaminated with the chemical agent.  *Id.*, ¶ 64.  Defendant Rivera then ordered the plaintiff to move to the contaminated cell.  *Id.*, ¶ 65.

Again, the plaintiff refused to move and requested a supervisor.  Lieutenant Fields responded.  After the plaintiff explained the various issues asserted in this complaint, Lieutenant Fields said he would raise defendant Rivera's conduct with HCC administration but required the plaintiff to move to the contaminated cell.  He did order that the plaintiff be given cleaning supplies to clean the cell.  *Id.*, ¶ 66.  The plaintiff cleaned the cell even though he had no training for this type of cleaning and was not paid for cleaning his cell.  *Id.*, ¶ 67.

On December 13, 2018, the plaintiff filed multiple grievances.  Defendant Scheaffer, the Administrative Remedies Coordinator, came to the unit and told the plaintiff that she would not process any of his grievances because he would be returning to Massachusetts.  *Id.*, ¶ 68.  The following day, the plaintiff complained to defendants Black and Green about denial of access to the grievance process.  *Id.*, ¶ 69.  He again spoke with defendant Black on December 17, 2018.  She said his complaints did not matter as he was "going back soon."  *Id.*, ¶ 70.

The plaintiff returned to Massachusetts on December 18, 2018.  *Id.*, ¶ 71.  On January 3, 2019, the plaintiff returned to Connecticut for court.  Again, he was housed at HCC.  *Id.*, ¶ 72.

Defendant Rivera told the plaintiff that he would be held in segregation on Administrative Detention Status based on his "out of state status."  This is not a criterion for placement on Administrative Detention Status.  The plaintiff believes this placement was intended for harassment.  *Id.*, second ¶ 72.  The plaintiff had no telephone access, no recreation,

7

no privileges, no access to religious practices and limited access to hygiene. The cell was dirty and cold with no window. There was no running hot water and the light remained on all day and night. *Id.*, ¶ 73. The plaintiff was not afforded due process and was unable to appeal the placement. *Id.*, ¶ 74.

On January 4, 2019, the plaintiff tried to address his issues with defendant Black during her unit tour. She ignored him. Later that day, the plaintiff tried to address defendant Green. She told the plaintiff that, per defendant Black's instructions, only defendant Rivera is permitted to deal with him. *Id.*, ¶ 75. The plaintiff was unable to speak with any correctional official during the time he remained in segregation. *Id.*, ¶ 76.

The plaintiff filed several grievances but received no receipts or responses. *Id.*, ¶ 77. On January 15, 2019, defendant Rivera threatened the plaintiff for filing grievances, saying "No one is going to nay say me, stop filing grievances or I'll chain you [Plaintiff] up until you leave." *Id.*, ¶ 78.

Later that day, the plaintiff had a visit with his attorney. Defendant Rivera escorted the plaintiff to the visit and cautioned him not to say anything. When defendant Rivera left the room, the plaintiff asked the officer present to speak with an administrator in the presence of his attorney regarding the threats and abuse by defendant Rivera. The officer agreed to call the administrative office. *Id.*, ¶ 79. When the plaintiff left the visiting area at the end of his attorney visit, he was confronted by defendants Black and Rivera. They told the plaintiff that he would regret it if he tried further tricks to expose them. *Id.*, ¶ 80.

On January 16, 2019, the plaintiff commenced a hunger strike in protest over the housing conditions and treatment. Mental health staff documented his complaints. As a result of the

intervention of mental health staff, the plaintiff was removed from segregation and returned to RHU South Block. He had been in segregation for sixteen days. *Id.*, ¶ 81. Defendant Rivera threatened the plaintiff for involving mental health staff. *Id.*, ¶ 82. On January 22, 2019, the plaintiff returned to Massachusetts. *Id.*, ¶ 83.

II.    Analysis

The plaintiff lists seven causes of action:  (1) the defendants denied the plaintiff due process by failing to afford him a hearing before placement on a restrictive status; (2) the defendants subjected the plaintiff to harassment, retaliation, and use of excessive force; (3) the defendants were deliberately indifferent to the plaintiff's medical needs by disregarding his medical conditions that contradicted use of a chemical agent, and were deliberately indifferent to safety by ordering that only defendant Rivera could interact with him; (4) defendants Black, Green and Scheaffer violated the Freedom of Information Act and engaged in spoliation of evidence by refusing his requests for preservation of video surveillance recordings; (5) defendants Black and Green failed to properly supervise HCC staff when they ignored staff misconduct and failed to act on reports of misconduct and abuse; (6) the defendants conspired to abuse the plaintiff and subject him to atypical and significant hardship, abuse, harassment, torment, and torture; and (7) defendants Scheaffer, Rivera, Green, and Black denied the plaintiff access to the grievance process.

A.    Due Process

The plaintiff contends that the defendants denied him due process by failing to afford him a hearing before placing him on Chronic Discipline status upon his return from Massachusetts in November 2018. The plaintiff was a sentenced prisoner at all times relevant to this action. *See*

9

*Baltas v. Frenis*, No., 2019 WL 1552915, at * 3 (D. Conn. Apr. 10, 2019) (Ruling on the

Plaintiff's Application for Prejudgment Remedy) (plaintiff is serving a 95-year sentence for

murder and a 20-year consecutive sentence for assault).

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court considered the process

due inmates in connection with their classification and transfer to Ohio's highest security prison.

Before any particular process is required, an inmate must demonstrate that he has a protected

liberty interest in avoiding the classification at issue. *Id.* at 221 (before invoking procedural

protections of the Due Process Clause, inmate must establish deprivation of an interest in life,

liberty, or property). The United States Constitution does not create a liberty interest in avoiding

transfer to more adverse conditions of confinement. *Id.* (citing *Meachum v. Fano*, 427 U.S. 215,

225 (1976)).

A liberty interest may arise under state regulations, but only if the restraint imposed

"while not exceeding the sentence in such an unexpected manner as to give rise to protection by

the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 222-23 (quoting *Sandin*,

515 U.S. at 483–84 (internal quotation marks omitted)). Thus, the Court must consider the

nature of the restrictions the plaintiff faced in restrictive housing under the Chronic Discipline

classification the first time he returned to Connecticut and the severity of those conditions in

relation to the ordinary incidents of prison life. *Id.* at 223 (citing *Sandin*, 515 U.S. at 484).

The Second Circuit has held that the *Sandin* analysis should be applied to determine

whether placement in non-punitive administrative segregation implicates a liberty interest. *Arce

v. Walker*, 139 F.3d 329, 334-35 (2d Cir. 1998). To determine whether conditions of segregated

10

confinement constitute an atypical and significant hardship, the district court should consider the duration of the inmate's confinement in segregation as well as the conditions of segregated confinement. *Palmer v. Richard*, 364 F.3d 60, 64 (2d Cir. 2004); see also *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("[T]he duration of [segregated] confinement is a distinct factor bearing on atypicality and must be carefully considered.").

The plaintiff alleges generally that he was subjected to limited out-of-cell time, showers, and social communication, and was denied social visits. The Second Circuit has "avoided a bright line rule that a certain period of [restrictive housing] confinement automatically fails to implicate due process rights." *Palmer*, 364 F.3d at 64 (citing *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999)). Where a detailed factual record is lacking, the Second Circuit has "affirmed the dismissal of due process claims only in cases where the period of time spent in [restrictive housing] was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in [restrictive housing]—and there was no indication that the plaintiff endured unusual [restrictive housing] conditions." *Id.* at 66 (citing cases).

The plaintiff was held in RHU on Chronic Discipline status for eighteen days, a period significantly less than thirty days. However, for four days, he was held in a cell exposed to cold temperatures from a crack in the outer wall, without running hot water in the sink or an operable toilet and with the light constantly on. ECF No. 1, ¶ 61. As confinement under harsh conditions for a short period of time can be atypical, Palmer, 364 F.3d at 64, the Court will permit the due process claim to proceed.

B.    Harassment

The plaintiff generally claims that the defendants harassed him. He alleges that the

11

defendants engaged "in a pattern of harassment, abuse, threats, assault, retaliation, [and] excessive force…." ECF No. 1, ¶ 88. As the Court considers possible claims for retaliation and use of excessive force below, it will restrict the analysis of this claim to other actions of the defendants.

To be cognizable as a violation of the Eighth Amendment right to be free from cruel and unusual punishment, harassment must be so drastic as to deprive a prisoner of the minimal civilized measure of life's necessities. *See Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The plaintiff must show that the actions complained of violate contemporary standards of human decency and that he suffered some injury or damage from the alleged harassment. *See Green v. Mazzuca*, 485 F. Supp. 2d 447, 451 (S.D.N.Y. 2007) (dismissing harassment claim based on allegations that correctional staff yelled and spit at plaintiff and threatened restrictive housing confinement).

The plaintiff alleges that the order to transfer to a cell in which a chemical agent had been deployed during his first return to Connecticut and his confinement in RHU on his second return to Connecticut were intended as harassment. Neither the transfer, which was accompanied by provision of cleaning supplies, nor the classification violates contemporary standards of decency. The plaintiff's harassment claim is dismissed.

C.    Retaliation

The plaintiff also generally alleges that the defendants retaliated against him. To state a retaliation claim, the plaintiff must allege facts establishing three elements: (1) he engaged in protected speech or conduct, (2) the defendants took adverse action against him, and (3) a causal connection between his protected speech and the adverse action. *Bilal v. White*, 494 F. App'x

143, 146 (2d Cir. 2012).  Because retaliation claims are easily fabricated, the courts consider

such claims with skepticism and require that they be supported by specific facts.  Conclusory

allegations of retaliatory conduct are not sufficient.  *See Dolan v. Connolly*, 794 F.3d 290, 295

(2d Cir. 2015) ("First Amendment retaliation claims brought by prisoners must be 'supported by

specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" (citation

omitted)); *see also Washington v. Afify*, 681 F. App'x 43, 45–46 (2d Cir. 2017) ("[B]ecause

prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of

unwarranted judicial intrusion into matters of general prison administration, we are careful to

require non-conclusory allegations." (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir.

2003)).

The plaintiff states that he made verbal and written complaints about his assignments to

RHU.  Filing complaints or grievances is protected activity.  *See Gill v. Pidlypchak*, 389 F.3d

379, 380 (2d Cir. 2004) (filing a grievance is constitutionally protected activity and will support

a retaliation claim).  Temporal proximity between protected conduct and an adverse action

constitutes circumstantial evidence of retaliation.  *Washington*, 681 F. App'x at 46.  In addition,

the plaintiff alleges that he was told to stop filing grievances because nothing would be done and

that he was threatened for filing grievances and trying to expose his conditions of confinement.

ECF No. 1, ¶¶ 78, 80.  These allegations are sufficient to support retaliation claims against the

defendants.

D.     Use of Excessive Force

The plaintiff asserts claims for use of excessive force relating to the use of chemical

agents, the cell extraction, and the application of in-cell restraints.  Although the plaintiff

13

references both the Eighth and Fourth Amendments in the introductory paragraphs, as a sentenced prisoner his excessive force claim is cognizable under the Eighth, not the Fourth Amendment. *See Reed v. Roberts*, No. 3:18-cv-809(JAM), 2018 WL 3733969, at *2 n.1 (D. Conn. Aug. 6, 2018) (excessive force claims of sentenced inmates considered under the Eighth Amendment, not the Fourth or Fourteenth Amendments) (citing *Brown v. Doe*, 2 F.3d 1236, 1242 n.1 (2d Cir. 1993)).

To state a claim for use of excessive force in violation of the Eighth Amendment, the plaintiff must allege facts establishing objective and subjective components. *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000). The objective component focuses on the harm done to the prisoner in light of contemporary standards of decency. The amount of harm required depends on the nature of the claim. *Id.* at 21. Although some degree of injury is usually required, the prisoner need not show that he suffered a significant injury to state a claim for use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.") (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as part of 'a good faith effort to maintain or restore discipline.'" *Id.* at 40 (quoting *Hudson*, 503 U.S. at 9).

The extent of the inmate's injuries is one factor the court may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation.

*Hudson*, 503 U.S. at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotation marks and citation omitted).

The plaintiff alleges that defendant Rivera ordered a chemical agent deployed even though the plaintiff stated that he was asthmatic and his medical records contained a contraindication for use of a chemical agent. In addition, the plaintiff stated repeatedly that he would comply with all orders if a supervisor came to his cell. Defendant Rivera decided to use excessive force to extract the plaintiff from the cell rather than call a supervisor. On the other hand, the plaintiff concedes that he threw water through the trap at defendant Rivera and covered his cell window and the trap. Defendant Harris was present and did not intervene. The facts alleged are sufficient to state a plausible claim for use of excessive force but require further development of the record to properly evaluate the claim.

Regarding application of the restraints, the plaintiff alleges that defendant Rivera ordered the tether chain wrapped in a way that prevented him from standing erect, and applied the restraints too tightly. Defendant Harris would not permit medical staff to check the restraints and ordered the records of the plaintiff's behavior falsified to lengthen the time he was confined in the restraints. Again, these allegations are sufficient to state a plausible claim. The claims for use of excessive force and failure to intervene will proceed against defendants Rivera and Harris.

E.    Deliberate Indifference to Medical Needs

The plaintiff contends that the defendants were deliberately indifferent to his medical needs when they deployed a chemical agent without consulting the medical unit and after the

15

plaintiff told them he was asthmatic and use of a chemical agent was contraindicated in his medical records.

To state a claim for deliberate indifference to a serious medical need, plaintiff must show both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have been "subjectively reckless" when he denied medical care. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). He must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See id.* Nor does a difference of opinion regarding what constitutes an appropriate response and treatment constitute deliberate indifference. *See Ventura v. Sinha*, 379 F. App'x 1, 2-3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

The residual effects of a chemical agent generally do not constitute a serious medical need. *See Alston v. Butkiewicus*, No. 3:09-cv-207(CSH), 2012 WL 6093887, at *16 (D. Conn. Dec. 7, 2012) (citing cases); *see also Carey v. Maloney*, 480 F. Supp. 2d 548, 557-58 (D. Conn.

16

2007) (exposure to chemical agent not serious medical need where asthmatic arrestee did not suffer an asthma attack or request medical attention and was decontaminated upon arrival at police station). The plaintiff generally alleges that he suffered effects from the chemical agent. He does not allege that he suffered an asthma attack. He alleges that he was "forced to refuse" decontamination because he was wearing a spit bag and decontamination would be ineffective. ECF No. 1, ¶ 54. He does not allege that he requested medical attention to treat the effects of the chemical agent at any time.

Although the lack of requests for medical attention suggest that the effects may not have been serious, the Court will permit the claim to proceed against defendants Rivera and Harris at this time for further development of the record.

F.    Deliberate Indifference to Safety

The plaintiff argues that the defendants were deliberately indifferent to his safety by requiring that only defendant Rivera could interact with him.

To state a claim for deliberate indifference to health or safety or failure to protect him from harm, the plaintiff must show that the conditions of his confinement posed a substantial risk of serious harm and that the defendants were deliberately indifferent to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists when the defendant knows of and disregards an excessive risk to the plaintiff's safety. *See id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

The plaintiff alleges that, when he returned to Connecticut the second time, he was informed that defendant Black had ordered that he could interact only with defendant Rivera.

Although the plaintiff objected to this order because of prior dealings with defendant Rivera, he alleges no facts suggesting that he suffered an excessive risk to his safety as a result of the order. The Court concludes that the plaintiff fails to state a cognizable claim for deliberate indifference to safety.

G.    Freedom of Information Act / Spoliation of Evidence

The plaintiff argues that defendants Black, Green, and Scheaffer violated the Freedom of Information Act ("FOIA") and engaged in spoliation of evidence by refusing his requests for preservation of video surveillance recordings.

The plaintiff does not indicate whether he is asserting a claim for violation of the federal or state FOIA. In either case, however, the claim must be dismissed. The federal FOIA applies only to federal agencies. 5 U.S.C. § 551(1). As no federal agency is named as a defendant, any federal FOIA claim is dismissed. The Connecticut FOIA does not provide a private right of action for money damages. *See Pane v. Danbury*, 267 Conn. 669, 678-80, 841 A.2d 684, 691-92 (2004). As the plaintiff seeks only damages, any Connecticut FOIA claim also is dismissed. If the plaintiff wishes to pursue a Connecticut FOIA claim seeking other relief, he should contact the Connecticut Freedom of Information Commission for information about how to do so.

The plaintiff also asserts a state tort claim for spoliation of evidence. "[T]he tort of intentional spoliation of evidence consists of the following essential elements: (1) the defendant's knowledge of a pending or impending civil action involving the plaintiff; (2) the defendant's destruction of evidence; (3) in bad faith, that is, with intent to deprive the plaintiff of his cause of action; (4) the plaintiff's inability to establish a prima facie case without the spoliated evidence; and (5) damages." *Traylor v. Awwa*, 899 F. Supp. 2d 216, 223 (D. Conn.

2012) (quoting *Rizzuto v. Davidson Ladders, Inc.,* 280 Conn. 225, 244–45, 905 A.2d 1165 (2006)) (internal quotation marks omitted).

The plaintiff alleges that he complained about his treatment to defendants Black and Green and requested preservation of video surveillance recordings.  Based on his many complaints, defendants Black and Green should have been aware of pending litigation.  Although the plaintiff has no knowledge whether the recordings were preserved or destroyed, the lack of response to his preservation requests likely means that the tapes were re-used.  However, even if the Court assumes that defendants Black and Green acted in bad faith, the plaintiff cannot establish the fourth element, that failure to preserve the recordings prevents him from establishing a prima facie case.  The plaintiff has personal knowledge of the conditions under which he was confined and the events that occurred.  Thus, he would be able to testify at trial or submit an affidavit in opposition to any motion for summary judgment that might be filed.  *See Caro v. Weintraub*, No. 3:09-CV-1353(PCD), 2010 WL 4514273, at *6-7 (D. Conn. Nov. 2, 2010) (plaintiff's personal knowledge of events makes his testimony is alternate source of allegedly spoliated evidence) , *adhered to on reconsideration*, 2011 WL 13234162 (D. Conn. Feb. 14, 2011).  The plaintiff's state law spoliation of evidence claim is dismissed.

H.     Supervisory Liability

The plaintiff contends that defendants Black and Green failed to properly supervise HCC staff when they ignored staff misconduct and failed to act on reports of misconduct and abuse.

To state a claim for supervisory liability, a plaintiff must establish that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the constitutional violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which the unconstitutional practices occurred, or allowed the continuance

of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference … by failing to act on information indicating that unconstitutional acts were occurring.

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *see also Merriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (to impose supervisory liability prisoner must allege that official had actual or constructive notice of unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act).

The plaintiff alleges that he repeatedly complained to the supervisory officials, defendants Black and Green, about his treatment. Thus, they had actual notice of the allegedly unconstitutional practices. As the Court has determined that the claims for use of excessive force and deliberate indifference to medical needs will proceed, the claims for supervisory liability will proceed as well.

I.      Conspiracy

The plaintiff argues that the defendants conspired to subject him to atypical and significant hardship, abuse, harassment, torment, and torture. The Court has concluded that the claims for use of excessive force, deliberate indifference to medical needs, deliberate indifference to safety will proceed. The plaintiff has alleged that the defendants acquiesced in defendant Black's decision that only defendant Rivera would interact with the plaintiff and that they all refused to address his claims in accordance with that order despite the plaintiff's claims of unconstitutional treatment.

To prevail on a claim for conspiracy under section 1983, the plaintiff must prove three

elements: (1) the existence of an agreement between two state actors or a state actor and a private party, (2) that the members of the conspiracy acted in concert to inflict an unconstitutional injury on the plaintiff, and (3) an overt act taken in furtherance of the conspiracy. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). However, under the doctrine of intracorporate conspiracy, "officers, agents and employees of a single corporate or municipal entity are legally incapable of conspiring together." Thus, they cannot be liable for conspiracy. *Blue v. City of New York*, No. 16-CV-9990(VSB), 2018 WL 2561023, at *9 (S.D.N.Y. June 4, 2018) (citing *Hartline v. Gallo*, 546 F.3d 95, 99 (2d Cir. 2008) (affirming application of intracorporate conspiracy doctrine in conspiracy claim under 42 U.S.C. § 1985(3))).

Although the Second Circuit has not determined whether the intracorporate conspiracy doctrine also applies to section 1983 conspiracy claims, district courts considering the issue have ruled that the doctrine applies in section 1983 conspiracy cases as well. *Id,* 2018 WL 2561023, at *9 n.10 (citing cases). As all defendants are correctional officials, the plaintiff's conspiracy claim is dismissed under the intracorporate conspiracy doctrine.

J.     Denial of Access to Grievance Process

The plaintiff alleges that defendants Scheaffer, Rivera, Green, and Black denied him access to institutional grievance procedures. Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes … create federally protected due process entitlements to specific

state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003));

*Kalican v. Dzurenda*, 2015 WL 1806561, at *6 (D. Conn. Aug.21, 2015) (no constitutional right

to receive response to grievance). Thus, the plaintiff has no constitutional right to receive

responses to his inmate requests or grievances or to have the grievances processed.

Further, although the Second Circuit has not held that denial of access to or interference

with prison grievance procedures is cognizable as a violation of a constitutionally protected right,

such as the right to petition the government for redress of grievances, district courts considering

the issue had held that it is not. *See Lopez v. McGill*, 2009 WL 179787, at *5-6 (D. Conn. Jan.

31, 2009) (denial of access to, or violation of, grievance procedures does not violate

constitutionally protected right such as right to petition government for redress of grievances)

(citing cases).

Further, any claim that interference with the grievance process will prevent him from

exhausting his administrative remedies and prevent him from proceeding on the merits of his

claims in federal court is incorrect. The plaintiff's right to petition the government for redress of

grievances included his right of access to the courts. "The constitutional right of access to the

courts is violated where government officials obstruct legitimate efforts to seek judicial redress."

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008) (internal quotation

marks and alteration omitted). To state such a claim, the plaintiff must demonstrate an "actual

injury," that is, he must show that the defendants interfered with his ability to pursue a non-

frivolous legal claim. *See Lewis v. Casey*, 518 U.S. 343, 349, 351 (1996). The Prison Litigation

Reform Act requires that inmates exhaust available administrative remedies before commencing

an action in federal court. 42 U.S.C. § 1997e(a). If prison officials "thwart inmates from taking

advantage of a grievance process through machination, misrepresentation, or intimidation" the grievance procedure would be unavailable and the inmate would be able to proceed to federal court. *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1859 (2016). Thus, the failure to process his grievances will not prevent the plaintiff from seeking redress in this action.

      K.    <u>Request for Investigation</u>

Finally, the plaintiff asks the Court to order the Office of the United States Attorney to investigate his claims. The court impartially decides disputes between the parties. It does not conduct investigations at the request of either party. *See Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000) ("[T]he trial judge is under no duty … to preform any legal 'chores' for the defendant that counsel would normally carry out."). The authority to investigate possible criminal charges rests solely with the prosecutor. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *see Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 380-81 (2d Cir. 1973) (decision of prosecute of investigate rests with the U.S. Attorney and substitution of court's decision for the U.S. Attorney's would be unwise). The plaintiff's request that the Court order a federal investigation into his allegations is denied. *See Triplett v. Palmer*, No. 12-CV-4062-DEO, 2012 WL 6727617, at *5 (N.D. Iowa Dec. 28, 2012) (request that court order a federal investigation is "beyond the power and jurisdiction of this Court, sitting in a 42 U.S.C. § 1983 action"). The plaintiff's request for investigation is dismissed as such relief is not cognizable in this case.

      L.    <u>Prejudgment Remedy</u>

The plaintiff includes a request for prejudgment remedy in his prayer for relief and also has filed a separate motion seeking this relief. The plaintiff is aware of the requirements for

obtaining a prejudgment remedy, having sought and been denied such relief in another case. *See Baltas v. Frenis*, No. 3:18 CV 1168(WWE), 2019 WL 1552915, at *6-7 (D. Conn. Apr. 10, 2019) (Ruling on the Plaintiff's Application for Prejudgment Remedy).

Before the Court will consider an application for prejudgment remedy, the plaintiff must submit several documents including an application and order in the form provided by statute and an "affidavit setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff." Conn. Gen. Stat. § 52-278c(a).

A review of the motion shows that the plaintiff has not attached the required documents. Accordingly, his motion for prejudgment remedy is denied without prejudice.

III.    Conclusion

The federal claims for conspiracy, harassment, denial of access to the grievance process, any Fourth Amendment claim, the claims for FOIA violations, the state tort claim for spoliation of evidence, and the request for federal investigation and prejudgment remedy are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The case will proceed against all defendants on the remaining claims set forth above.

The plaintiff's motion for prejudgment remedy [**ECF No. 3**] is **DENIED** without prejudice. His motion for extension of time to submit a corrected motion to proceed in forma pauperis [**ECF No. 7**] is **DENIED** as moot.

The Court enters the following orders:

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain the service or current work address for defendants Rivera, Harris, Scheaffer, Green, and Black, mail a waiver of service of process request packet containing the Complaint to them at the addresses provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** send the plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so may result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.   The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

(10)     **The Clerk shall** immediately enter the Standing Order Re: Initial Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 21st day of August 2019 at Hartford, Connecticut.

_____/s/_____
Michael P. Shea
United States District Judge