# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOE BALTAS, : | | |
|     Plaintiff, : | CASE NO. 3:19-cv-1043 (MPS) | |
| : | | |
| v. : | | |
| : | | |
| HECTOR RIVERA, et al., : | | |
|     Defendants. : | | |
| : | FEBRUARY 4, 2020 | |
| : | | |

---

### RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Joe Baltas has filed this action under 42 U.S.C. § 1983 against five correctional officials at Hartford Correctional Center, Lieutenant Hector Rivera, Lieutenant Harris, Counselor Scheaffer, Captain Ernestine Green, and Warden Allison Black. By Initial Review Order filed on August 21, 2019, the Court determined that the complaint would proceed on the following claims: denial of due process against all defendants; retaliation against all defendants; use of excessive force against defendant Rivera and failure to intervene against defendant Harris; deliberate indifference to medical needs against defendants Rivera and Harris; and a supervisory liability claim against defendants Black and Green. ECF No. 10.

The defendants have filed a motion to dismiss. For the following reasons, the motion to dismiss is granted in part.

I.     Standard of Review

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* However, when reviewing a motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

II.     Facts

On April 20, 2018, the plaintiff was placed on Chronic Discipline status. Prison directives provide that an inmate may be removed from Chronic Discipline status if he remains disciplinary report free for 90 days. The plaintiff's last disciplinary report was issued on July 19, 2018, and he was released from Chronic Discipline status in October 2018. ECF No. 1. ¶ 20.

On November 8, 2018, the plaintiff was transferred to Massachusetts under an interstate compact agreement. *Id.* On November 30, 2018, the plaintiff was returned to Connecticut to attend court. He was admitted to Hartford Correctional Center ("HCC"). *Id.*, ¶ 21.

Defendant Rivera is the unit manager of the restrictive housing units ("RHU") at HCC. *Id.*, ¶ 22. After the plaintiff was processed, defendant Rivera told him that he would be placed in a restrictive housing unit because of his Chronic Discipline status. In restrictive housing, the plaintiff would be unable to receive visits or social mail, would receive only one hour of recreation five days per week, would be permitted only three showers per week, and would be

2

denied telephone access because of an outstanding disciplinary sanction. *Id.*, ¶ 23. The plaintiff told defendant Rivera that he had been taken off Chronic Discipline status before he left Connecticut. The plaintiff also stated that, even if he had been on Chronic Discipline status, a new hearing would be required before he could be returned to Chronic Discipline status. *Id.*, ¶ 24.

Defendant Rivera stated that he, not the plaintiff, dictates treatment. *Id.*, ¶ 25. The plaintiff was placed in RHU South Block, which housed inmates classified as Security Risk Group members, Special Needs, and Protective Custody. The plaintiff was denied rights and privileges he would have had in general population, such as social activities, exercise, visits, and communication. *Id.*, ¶ 26.

On December 3, 2018, a protective custody/security risk group inmate falsely accused the plaintiff of throwing urine on him through a secure and sealed door. The plaintiff and other inmates submitted written statements that the accusation was false. *Id.*, ¶ 27. A lieutenant responded to the unit and stated that defendant Rivera had been contacted and ordered that the plaintiff be placed in segregation. After "some verbal controversy," the plaintiff was moved to the segregation unit. *Id.*, ¶ 28.

On December 5, 2018, defendant Rivera threatened the plaintiff with physical harm and reiterated his position that he dictated the plaintiff's life at HCC. *Id.*, ¶ 29. The plaintiff submitted request forms to various administrators at HCC and requested preservation of video surveillance footage. *Id.*, ¶ 30. Defendant Green came to the housing unit and told the plaintiff that he would receive no responses to his requests and that video surveillance footage would not be preserved. *Id.*, ¶ 31.

On December 7, 2018, defendant Rivera ordered the plaintiff to move to another cell in the segregation unit. The new cell had a crack in the exterior wall, exposing the interior of the cell to the elements. As it was winter, the new cell was very cold. The plaintiff contends that the move was intended only to harass him. *Id.*, ¶ 32. The plaintiff refused to move and asked to speak with a supervisor. *Id.*, ¶ 33.

Defendant Rivera threatened to deploy a chemical agent and beat the plaintiff over the head stating "you['re] going to learn you're my bitch today." *Id.*, ¶ 34. The plaintiff felt fearful and anxious. He decided to do what he could to prevent the use of force against him. *Id.*, ¶ 35. The plaintiff stated that he agreed to be moved, but when defendant Rivera opened the trap in the cell door, the plaintiff threw a cup of cold water at defendant Rivera. The plaintiff assumed that defendant Rivera would then remove himself from the situation and have a different supervisor respond to the incident. *Id.*, ¶ 36. Defendant Rivera did not remove himself and remained in command of the situation. *Id.*, ¶ 37.

The plaintiff then covered his window, believing this would cause other staff to respond and record the incident. *Id.*, ¶ 38. Several officers responded and defendant Harris began to record the incident on a hand-held video-camera. *Id.*, ¶ 39. Under defendant Rivera's supervision, the officers began planned use of force procedures. The plaintiff repeatedly stated that defendant Rivera had threatened him and that he only wanted a captain or administrator to come to the unit. None of the officers, including specifically defendant Harris, interceded to stop the procedures or called a supervisor. *Id.*, ¶¶ 40-41.

Defendant Rivera ordered the use force against the plaintiff. *Id.*, ¶ 42. The plaintiff held his mattress against the trap and continued to request a supervisor. *Id.*, ¶ 43. Defendant Rivera

4

began to personally use force against the plaintiff in violation of prison directives. *Id.*, ¶ 44. Defendant Rivera used the Barricade Obstruction Tool ("BOT"), a long metal cylindrical object designed to push aside obstructions and deploy a chemical agent. He deliberately and forcefully struck the plaintiff several times with the BOT. *Id.*, ¶ 45.

When a chemical agent was disbursed, the plaintiff stated that he was asthmatic and had a history of negative reactions to the chemical agent. Defendant Rivera denied this and deployed more of the chemical agent into the cell. *Id.*, ¶ 46. He ignored the plaintiff's documented medical condition. *Id.*, ¶ 47.

Throughout the incident, the plaintiff stated that he feared defendant Rivera and would comply if a supervisor were present. Rather than intervening, defendant Harris encouraged defendant Rivera in the use of force. *Id.*, ¶ 48. After being struck several times with the BOT, the plaintiff again requested a supervisor. Defendant Rivera denied the request saying, "You don't dictate here" and "You're gonna learn today." He then continued to strike the plaintiff and deploy the chemical agent. *Id.*, ¶ 49.

The chemical agent finally overwhelmed the plaintiff causing him to leave the cell. *Id.*, ¶ 51. The plaintiff submitted to restraints. *Id.*, ¶ 52. Defendant Rivera ordered use of a safety veil which should only be utilized when there is an immediate threat of the inmate spitting at staff. The plaintiff denies any such threat. *Id.*, ¶ 53. Because of the veil, the plaintiff could not be properly decontaminated. *Id.*, ¶¶ 54-55. Defendant Rivera then ordered the plaintiff's placement in in-cell restraints consisting of handcuffs and shackles connected by a tether chain. The restraints were not necessary as the plaintiff remained calm and compliant. *Id.*, ¶ 56. Defendant Rivera shortened the tether chain to cause the plaintiff discomfort and pain, an action expressly

prohibited by correctional policy and procedures. He instructed the camera operator to hold the camera high so this action would not be recorded. *Id.*, ¶ 57.

The plaintiff remained in in-cell restraints for 24 hours. The cell did not have an operable toilet and the light remained on all day and night. The plaintiff experienced pain from the restraints and chemical agent. *Id.*, ¶ 58. Defendant Harris conducted the required restraint checks. She refused to remove the restraints or permit medical staff to enter the cell to check the restraints. *Id.*, ¶ 59. She also ordered the unit officers to falsify documents to indicate that the plaintiff was non-compliant. *Id.*, ¶ 60.

The plaintiff was removed from the restraints on December 8, 2018 and placed in the cell that was exposed to the elements. In addition to cold temperatures, the toilet did not flush, there was no running water in the sink, and the light remained on all day and night. The constant light was at defendant Rivera's order. *Id.*, ¶ 61. The plaintiff submitted requests to the warden and administrative captain about the incidents and requested preservation of video surveillance recordings. *Id.*, ¶ 62.

On December 11, 2018, the plaintiff spoke with Warden Black when she toured the unit. He described the incidents and the refusal to process prior requests. Defendant Black stated that defendant Rivera and the other officers had her full support. *Id.*, ¶ 63.

On December 12, 2018, the plaintiff observed defendant Rivera use a chemical agent on inmate Jumpp. After removing inmate Jumpp from the cell, defendant Rivera had inmate Jumpp's cellmate moved to a different cell because the cell was contaminated with the chemical agent. *Id.*, ¶ 64. Defendant Rivera then ordered the plaintiff to move to the contaminated cell. *Id.*, ¶ 65.

6

Again, the plaintiff refused to move and requested a supervisor. Lieutenant Fields responded. After the plaintiff explained the various issues asserted in this complaint, Lieutenant Fields said he would raise defendant Rivera's conduct with HCC administration but required the plaintiff to move to the contaminated cell. He did order that the plaintiff be given cleaning supplies to clean the cell. *Id.*, ¶ 66. The plaintiff cleaned the cell even though he had no training for this type of cleaning and was not paid for cleaning his cell. *Id.*, ¶ 67.

On December 13, 2018, the plaintiff filed multiple grievances. Defendant Scheaffer, the Administrative Remedies Coordinator, came to the unit and told the plaintiff that she would not process any of his grievances because he would be returning to Massachusetts. *Id.*, ¶ 68. The following day, the plaintiff complained to defendants Black and Green about denial of access to the grievance process. *Id.*, ¶ 69. He again spoke with defendant Black on December 17, 2018. She said his complaints did not matter as he was "going back soon." *Id.*, ¶ 70.

The plaintiff returned to Massachusetts on December 18, 2018. *Id.*, ¶ 71. On January 3, 2019, the plaintiff returned to Connecticut for court. Again, he was housed at HCC. *Id.*, ¶ 72.

Defendant Rivera told the plaintiff that he would be held in segregation on Administrative Detention Status based on his "out of state status." This is not a criterion for placement on Administrative Detention Status. The plaintiff believes this placement was intended for harassment. *Id.*, second ¶ 72. The plaintiff had no telephone access, no recreation, no privileges, no access to religious practices and limited access to hygiene. The cell was dirty and cold with no window. There was no running hot water and the light remained on all day and night. *Id.*, ¶ 73. The plaintiff was not afforded due process and was unable to appeal the placement. *Id.*, ¶ 74.

7

On January 4, 2019, the plaintiff tried to address his issues with defendant Black during her unit tour. She ignored him. Later that day, the plaintiff tried to address defendant Green. She told the plaintiff that, per defendant Black's instructions, only defendant Rivera is permitted to deal with him. *Id.*, ¶ 75. The plaintiff was unable to speak with any correctional official during the time he remained in segregation. *Id.*, ¶ 76.

The plaintiff filed several grievances but received no receipts or responses. *Id.*, ¶ 77. On January 15, 2019, defendant Rivera threatened the plaintiff for filing grievances, saying "No one is going to nay say me, stop filing grievances or I'll chain you [Plaintiff] up until you leave." *Id.*, ¶ 78.

Later that day, the plaintiff had a visit with his attorney. Defendant Rivera escorted the plaintiff to the visit and cautioned him not to say anything. When defendant Rivera left the room, the plaintiff asked the officer present to speak with an administrator in the presence of his attorney regarding the threats and abuse by defendant Rivera. The officer agreed to call the administrative office. *Id.*, ¶ 79. When the plaintiff left the visiting area at the end of his attorney visit, he was confronted by defendants Black and Rivera. They told the plaintiff that he would regret it if he tried further tricks to expose them. *Id.*, ¶ 80.

On January 16, 2019, the plaintiff commenced a hunger strike in protest over the housing conditions and treatment. Mental health staff documented his complaints. As a result of the intervention of mental health staff, the plaintiff was removed from segregation and returned to RHU South Block. He had been in segregation for sixteen days. *Id.*, ¶ 81. Defendant Rivera threatened the plaintiff for involving mental health staff. *Id.*, ¶ 82. On January 22, 2019, the plaintiff returned to Massachusetts. *Id.*, ¶ 83.

III.   Discussion

The defendants move to dismiss all claims against defendant Scheaffer; all due process claims against defendants Black, Harris, and Green; all excessive force claims against defendants Black and Green; all retaliation claims against defendants Harris and Green; all deliberate indifference to medical needs claims against defendants Black and Green; and all supervisory liability claims against defendants Black and Green.

As an initial matter, the Court notes that, in the Initial Review Order, the Court held that the excessive force claim would proceed only against defendant Rivera and the deliberate indifference to medical needs claim would proceed only against defendants Rivera and Harris. ECF No. 10 at 15, 17.  The defendants move to dismiss these claims as to defendants Black and Green.  As these claims are not proceeding against defendants Black and Green, the defendants' motion to dismiss these claims against defendants Black and Green is denied as moot.

   A.   Claims Against Defendant Scheaffer

The defendants state that the Court has dismissed all claims in which defendant Scheaffer was alleged to be personally involved and ask that she be dismissed from this action.  The defendants' request is granted.  The Clerk is directed to terminate Counselor Scheaffer as a defendant in this case.

   B.   Due Process Claims Against Defendants Black, Harris and Green

The defendants note that the Court permitted the due process claim to proceed, even though the plaintiff was held in restrictive housing for less than thirty days, because he was exposed to harsh, and possibly atypical, conditions.  They contend that only defendant Rivera is linked to those conditions and argue that the due process claim should proceed only against

9

defendant Rivera.

The defendants' motion is denied as to defendants Black and Green for two reasons. First, the Court has granted the plaintiff's motion for reconsideration because the Court incorrectly assumed that the due process claim, which referenced "placement on a restrictive status and/or placement in a restrictive housing unit," referred only to the placement on Chronic Discipline status and not to the second placement in Administrative Detention. The due process claim encompasses more than this one incident. Second, although the harsh conditions could make the plaintiff's restrictive housing confinement an atypical and significant hardship, his claim is not based only on those four days. The argument that defendants Black and Green were not responsible for that four-day placement does not preclude their involvement in the plaintiff's due process claim.

Regarding defendant Harris, the plaintiff states that he does not object to the dismissal of the due process claim against her. ECF No. 25 at 2. Accordingly, the defendants' motion to dismiss is granted as to the due process claim against defendant Harris.

C.  Retaliation Claims Against Defendants Harris and Green

The defendants move to dismiss the retaliation claims against defendants Harris and Green. The plaintiff does not object to the dismissal of these claims. *Id.* Accordingly, the motion is granted as to any retaliation claims against defendants Harris and Green.

D.  Supervisory Liability Claims against Defendants Black and Green

Finally, the defendants move to dismiss all supervisory liability claims against defendants Black and Green regarding the use of excessive force and denial of medical care, on the ground that these were discrete incidents and the plaintiff has not alleged that they were made aware of

any constitutional violations until after the violation had concluded.

In *Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013), the Second Circuit held that a letter "to the Warden at an appropriate address and by appropriate means" was sufficient to state a claim that the Warden was aware of the incident and warrant discovery regarding his knowledge and response. *Id.* at 141. Claims for supervisory liability have been dismissed where the constitutional violation occurred before the supervisory official was notified of the incident or conduct. *See Young v. Choinski*, 15 F. Supp. 3d 172, 192 (D. Conn. 2014) (explaining that supervisory official can be personally involved in a constitutional violation if the violation is ongoing and he takes no corrective action but is not personally involved if he learns of the violation after-the-fact) (citing cases).

In opposition to the motion to dismiss, the plaintiff states that he informed defendants Black and Green of his concerns within 24 hours. In his Complaint, however, he alleges that he submitted all of the requests to defendants Black and Green on December 8, 2018, after he was released from restraints. ECF No. 1 ¶ 62. As the use of force was concluded before he submitted any requests to defendants Black and Green, the defendants' motion to dismiss is granted as to the supervisory liability claim relating to the use of excessive force. The plaintiff alleges that he was never provided proper decontamination from the effect of the chemical agent. Notification twenty-four hours later could afford defendants Black and Green an opportunity to address the issue. Thus, the motion to dismiss is denied as to the claim for denial of medical care.

IV. Conclusion

The defendants' motion to dismiss [**ECF No. 24**] is **GRANTED** as to the claims against

defendant Scheaffer, the due process claim against defendant Harris, the retaliation claims against defendants Harris and Green, and the supervisory liability claim against defendants Black and Green regarding the use of excessive force.  The motion is **DENIED** in all other respects.  The Clerk is directed to terminate Counselor Scheaffer as a defendant in this case.

  **SO ORDERED** at Hartford, Connecticut, this 4th day of February, 2020.

             /s/
             Michael P. Shea
             United States District Judge